

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00261-CV

_____

JIM S. ADLER, P.C. D/B/A JIM ADLER & ASSOCIATES, Appellant

V.

FRANCISCO MARTINEZ AS NEXT FRIEND OF CLAUDIA ORTIZ, AN
INCAPACITATED PERSON, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV25-06-443

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

The law firm of Jim S. Adler, P.C. d/b/a Jim Adler & Associates appeals a take-nothing default summary judgment that was entered on the firm's intervention petition in a personal-injury suit. Adler had sought a declaration that its first-in-time contingent-fee agreements with an accident victim's next friend and separately with the victim herself were valid and had been terminated without good cause, thus giving Adler a contractual claim to a percentage of any recovery obtained by the replacement firm. Because the judgment granted more relief than requested—the motion attacked only one of the two fee agreements but the trial court disposed of both—we will reverse.

## Background

On July 30, 2022, Claudia Ortiz was involved in a crash on a Wise County farm-to-market road with a commercial trailer–truck rig that was stopped on the road. She sustained serious injuries that led to weeks' long hospitalization in the intensive-care unit.

On August 11, 2022, her brother Francisco Martinez—individually and as her next friend—executed a contingent-fee agreement with Adler. Five days later in the ICU, Ortiz herself signed a similar agreement. Both contracts provide that "[if] Client chooses to release Attorney prior to [the funding of any settlement or judgment], this agreement will be deemed to have been breached and Attorney shall have the right to

receive the full amount of attorney's fees as stated herein," even if the settlement or judgment was obtained through other counsel's efforts.

A relevant chronology is helpful for context:

- **08/11/2022:** Martinez executes an agreement with Adler with the following designation of "Client."

DocuSign Envelope ID: B03B110F-E61D-4BCC-ABB5-82F42D43468D

Filed 12/16/2022 4:35 PM
Brenda Rowe, District Clerk
Wise County, Texas
By: Janean Kerr

**POWER OF ATTORNEY and CONTINGENT FEE AGREEMENT**

(1)     PARTIES: I/We, Francisco Martinez _____, individually and as next friend of Claudia Ortiz _____ (hereinafter referred to as "Client") have employed the law firm of Jim S. Adler & Associates (hereinafter referred to as "Attorney", whether one or more) to represent me, my heirs and assigns, to prosecute through settlement or judgment on any and all claims that I have and hold against all natural persons, corporate entities, governmental entities, insurance companies and any other persons or entities who may be responsible for any and all damages for or arising out of a certain incident that occurred on or about the _____ day of 07/30/2022 _____, 20_____.

- **08/16/2022:** Ortiz personally signs a virtually identical agreement[1] showing herself as "Client."

(1)     PARTIES: I, Claudia Ortiz _____, (hereinafter referred to as "Client") have employed the law firm of Jim S. Adler & Associates (hereinafter referred to as "Attorney", whether one or more) to represent me, my heirs and assigns, to prosecute through settlement or judgment on any and all claims that I have and hold against all natural persons, corporate entities, governmental entities, insurance companies and any other persons or entities who may be responsible for any and all damages for or arising out of a certain incident that occurred on or about the 30 day of 7 _____, 20 22.

- **08/21/2022 (6:11 p.m.):** Martinez emails Adler terminating its representation of Ortiz.

- **08/21/2022 (9:13 p.m.):** A different lawyer files suit in Wise County naming as plaintiffs Martinez as Ortiz's next friend and two passengers who were in her car.

- **08/23/2022:** The Samples Ames firm appears as plaintiffs' co-counsel.

---

[1]Except for a few nonsubstantive wording changes, the only real difference is that Martinez's contract contains an arbitration clause; Ortiz's does not. That difference is immaterial to today's disposition.

- **08/29/2022:** Adler writes Samples Ames that it intends to maintain its contingent interest.

- **"A week later":** Adler receives a hand-written note with Ortiz's name stating that she does not want Adler to work on her case.

- **12/16/2022:** Attaching both fee agreements to its pleading, Adler (abbreviated as JSA) intervenes in the Wise County suit to enforce its agreements with Martinez and Ortiz.

> 3.2 JSA seeks a declaratory judgment that JSA's contracts with Claudia Ortiz and her next friend Francisco Martinez were not terminated with good cause and therefore JSA holds a valid claim for attorney's fees in this matter as listed in the contingent fee agreements that Plaintiffs signed with JSA.

  In its prayer for relief, Adler asked for "judgment that it has valid contingent fee agreements with Claudia Ortiz and Francisco Martinez."

- **09/13/2024:** Unbeknownst to Adler because of a firm-wide system outage lasting from September 4 until September 15, 2024, the trial court issues a scheduling order that (among other things) sets June 2, 2025 as the final pretrial conference and the date on which any summary-judgment motions will be heard.

- **05/09/2025:** Martinez moves for summary judgment against Adler on Ortiz's August 16, 2022 agreement, alleging that she had lacked capacity to sign it. Martinez does not mention or move for summary judgment on his August 11, 2022 agreement. Because of the September 13, 2024 scheduling order, Martinez never sends Adler notice of hearing.[2]

---

[2]Under the then-current version of Rule 166a(c), a nonmovant had until seven days before a noticed hearing to respond to a summary-judgment motion. *See* Sup. Ct. of Tex., Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Feb. 27, 2026). But the "amendments apply only to a motion for summary judgment filed on or after March 1, 2026," *id.*, so they do not apply here. Our citations to Rule 166a refer to the earlier version, which continues to govern summary-judgment motions filed before March 1, 2026.

- **06/02/2025:** The trial court holds the scheduled pretrial hearing, which Adler does not attend, and grants summary judgment; the order recites that

    o the trial court has "considered Plaintiff's Motion for Summary Judgment";

    o "notes that no response has been filed";

    o "ORDERS that [Adler] take nothing";

    o "SEVERS the Intervention into a separate cause number";

    o states that any other requested relief is denied; and

    o concludes by stating that "[u]pon severance, this Order is final and appealable."

- **06/03/2025:** Adler receives notice of the June 2 judgment and immediately files a motion for new trial, alleging that (1) it never received notice of the summary-judgment hearing and (2) the order erroneously granted Martinez more relief than he had requested because Martinez had moved only on Ortiz's agreement and not on his own.

- **06/05/2025:** As part of a continued pretrial hearing in the personal-injury suit, the trial court hears and orally denies Adler's new-trial motion. At this hearing Adler first becomes aware of the September 13, 2024 scheduling order when opposing counsel uses it in argument; having seen the date, Adler explains on the record that the system outage would have kept it from receiving the order. Adler files its notice of appeal the same day.

- **07/02/2025:** Adler files an amended motion for new trial that fleshes out and provides evidentiary support concerning the September 2024 system outage and its effect.

- **07/07/2025:** The trial court hears Adler's motion to deposit disputed funds into the court's registry[3]; Adler's amended new-trial motion is briefly discussed.

- **07/14/2025:** The trial court signs two orders denying Adler's amended new-trial motion; one of them additionally orders that the amended motion be struck from the record.[4]

## Issues on Appeal

Adler raises three issues:

1. Did the trial court abuse its discretion in failing to grant a new trial when all three elements of the *Craddock*[5] test were satisfied?

2. Did the trial court err in striking the amended new-trial motion when it was filed within the time period permitted by Rule 329b(b) and before the original motion was overruled by a written order?

---

[3]By this time, the underlying personal-injury case had settled for an undisclosed amount.

[4]Martinez's counsel had written to the trial court on July 10 claiming that Adler's amended motion required leave of court, which had not been obtained, and should therefore be struck. *See* Tex. R. Civ. P. 329b(b). Although we need not decide the issue, we note that because Adler's initial motion had not been overruled in writing, its amended motion—filed within 30 days of the judgment—did not require leave of court. *E.g.*, *Reese v. Piperi*, 534 S.W.2d 329, 330–31 (Tex. 1976) (holding that Rule 329b requires a "written and signed order," not an oral ruling); *see* Tex. R. Civ. P. 329b(b) ("One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed.").

[5]*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939).

3. Did the trial court err in granting summary judgment on all claims related to the two contracts when the summary-judgment motion challenged the enforceability of only one of them?

Concluding that Adler's third issue warrants reversal in and of itself, we need not reach its new-trial issues because they are unnecessary to our final disposition. *See* Tex. R. App. P. 47.1.

**Discussion**

A summary judgment "may only be granted upon grounds expressly asserted in the summary[-]judgment motion," and granting a summary judgment on a claim not addressed in the motion "is, as a general rule, reversible error." *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[A] motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion."); Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor. . . . Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.")

Moreover, "[a]n appellate court cannot 'read between the lines, infer or glean from the pleadings or the proof' any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court" in the motion. *McConnell*, 858 S.W.2d at 343 (quoting *Clark v. First Nat'l Bank of Highlands*,

7

794 S.W.2d 953, 956 (Tex. App.—Houston [1st Dist.] 1990, no writ)). "The term 'grounds' means the reasons that entitle the movant to summary judgment, in other words, 'why' the movant should be granted summary judgment." *Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 923 (Tex. App.—Dallas 2009, no pet.).

Here, Martinez's "why" was targeted, specific, and unequivocal: "Claudia [Ortiz] requests traditional summary judgment as to all claims brought by [Adler] on the ground that she lacked the capacity to contract at the time [Adler's] case runner came to her room in the ICU." After then discussing a physician's summary-judgment affidavit opining that Ortiz did not have the requisite mental capacity to sign the agreement, Martinez asserted that "[f]or this reason, Claudia [Ortiz] requests a) summary judgment as to all claims brought against her by [Adler] and b) a declaration that any contract between her and [Adler] is voidable at her election." As the motion makes plain, nothing indicated that Martinez was seeking summary judgment on his own agreement signed five days before Ortiz's, nor that he sought judgment that his agreement had merged into his sister's and ceased to exist.[6]

---

[6]Martinez suggested for the first time during the June 5, 2025 hearing that the merger doctrine applied because Ortiz's fee agreement provided that it "constitute[d] the entire agreement between Client and Attorney and that there are no other oral or written agreements or representations between the parties which vary, alter, or expand the terms of this agreement." In his appellate briefing, Martinez again raises the merger doctrine but does not dispute that his summary-judgment motion did not mention his separate agreement or the merger issue. In the summary-judgment context, the term "issues" means "legal theories (i.e., grounds of recovery and

8

Despite there being two different fee agreements at issue and a motion dealing with only one of them, the trial court severed "the Intervention," ordered that Adler "take nothing," and concluded that "[a]ny other relief requested is denied. Upon severance, this Order is final and appealable." That disposition, denying Adler's claim under the Martinez agreement[7] as well as under the Ortiz agreement, exceeded the scope of the relief sought and was erroneous. We sustain Adler's third issue.

---

defenses) and factual theories," *Lee v. Rogers Agency*, 517 S.W.3d 137, 163 (Tex. App.—Texarkana 2016, pet. denied), and the merger doctrine is an affirmative defense, *see Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 101 (Tex. App.—Houston [14th Dist.] 2014, no pet.), that needed to be but was not raised.

Regardless, under Martinez's own cited authority, successfully invoking the merger doctrine requires that "the last contract must be between the *same* parties as the first." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied). Although it strikes us that one person signing as next friend and a second person signing without contractual capacity are not conceptually the same "parties" for these purposes, the merger doctrine was not before the trial court and is not properly before us.

[7]In the trial court and on appeal, the parties have regarded this order as a final one that disposed of Adler's claims under both agreements—that is, no one ever argued that Adler's claim involving the Martinez agreement was and is still alive in the trial court based on the order's references to "Plaintiff." Indeed, during the June 5, 2025 new-trial hearing, the trial judge stated, "I thought I had granted a -- an order that -- so that Mr. Adler's firm is no longer involved," to which Adler responded, "You did, your Honor." That understanding carried through to the July 7, 2025 hearing, at which Adler stated, "So as the Court knows, you entered a default judgment against [Adler], back on June 2nd, and you then severed the claims brought by my client into their own cause number making that order final and appealable."

The written order could have been clearer, but in light of the entire record we conclude that it disposed of both fee agreements. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) ("The record may help illumine whether an order is made final by its own language, so that an order that all parties appear to have treated

9

As for the scope and effect of our holding, we note that Adler does not seek reversal of the summary judgment as to Ortiz; it does not, for example, argue that its new-trial motion(s) alleged facts and brought forth summary-judgment proof sufficient to raise a material issue of fact to defeat summary judgment based on her alleged incapacity. *See Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 825 (Tex. App.—San Antonio 2012, no pet.) (explaining how *Craddock*'s meritorious-defense factor, used in no-answer default situations, is modified in summary-judgment context to require material fact issue). Indeed, in its *Craddock* analysis, Adler relies entirely on Martinez's separate contract for that factor: "The [Martinez] contract creates a genuine issue of material fact to defeat the sole ground [Ortiz's lack of capacity] raised in the Motion for Summary Judgment." Adler's reply brief is even more direct: "Because Martinez did not move for summary judgment with respect to the contract he signed, the order granting summary judgment on that claim cannot stand." Adler makes no corollary argument concerning the summary judgment for Ortiz.

---

as final may be final despite some vagueness in the order itself . . . ."); *Spence v. Hadley*, No. 11-19-00389-CV, 2021 WL 4998863, at *5 (Tex. App.—Eastland Oct. 28, 2021, no pet.) ("If a trial court's grant of summary judgment decrees that 'plaintiff take nothing,' even if the movant sought summary judgment 'on only one of [multiple] claims asserted by the plaintiff,' then 'the judgment is final—erroneous, but final.'" (quoting *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001)); *Treadway v. Shanks*, 110 S.W.3d 1, 6 (Tex. App.—Dallas 2000), *aff'd*, 110 S.W.3d 444 (Tex. 2003) (if judgment is ambiguous, ambiguity should be resolved, if possible, considering the entire content of the judgment and the record).

Accordingly, we affirm the summary judgment in part as to the Ortiz contract but reverse in part and remand Adler's claim under the Martinez contract. *See Leyva v. Ace Am. Ins. Co.*, 330 S.W.3d 6, 11 (Tex. App.—El Paso 2010, pet. denied) ("If summary judgment on one claim is proper, but the summary judgment order grants more relief than the movant requests, we must reverse the summary judgment in part and remand the claims not addressed in the summary[-]judgment motion."); *Stancu v. Stalcup*, 127 S.W.3d 429, 432 (Tex. App.—Dallas 2004, no pet.) (same).

## Conclusion

Having sustained Adler's third issue and not needing to reach its other issues, *see* Tex. R. App. P. 47.1, we affirm the judgment concerning Adler's claim under the Ortiz contingent-fee agreement, reverse the judgment on Adler's claim under the Martinez contingent-fee agreement, and remand that claim for further proceedings in the trial court.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  June 25, 2026

11